UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANNE MARIE RODRIGUEZ,

                Plaintiff,          Civil Action No. 15-13491
                                      Honorable Thomas L. Ludington
                                        Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [14, 15]

Plaintiff Anne Marie Rodriguez ("Rodriguez") brings this action pursuant to 42 U.S.C. §405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [14, 15], which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

## I.    RECOMMENDATION

For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") conclusion that Rodriguez is not disabled under the Act is not supported by substantial evidence. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [**15**] be **DENIED**, Rodriguez's Motion for Summary Judgment [**14**] be **GRANTED IN PART** to the extent it seeks remand and **DENIED IN PART** to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. §405(g), this case be **REMANDED** to the ALJ for further proceedings consistent with this Report and Recommendation.

**II.    REPORT**

    **A.    Procedural History**

On March 19, 2013, Rodriguez filed an application for DIB, alleging a disability onset date of December 14, 2011. (Tr. 153-59). This application was denied initially on July 3, 2013. (Tr. 104-07). Rodriguez filed a timely request for an administrative hearing, which was held on May 22, 2014, before ALJ Christopher Ambrose. (Tr. 37-91). Rodriguez, who was represented by attorney Patrick Marutiak, testified at the hearing, as did vocational expert Sandra Steele. (*Id.*). On June 23, 2014, the ALJ issued a written decision finding that Rodriguez is not disabled under the Act. (Tr. 22-33). On August 20, 2015, the Appeals Council denied review. (Tr. 1-5). Rodriguez timely filed for judicial review of the final decision on October 6, 2015. (Doc. #1).

    **B.    Framework for Disability Determinations**

Under the Act, DIB are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §423(d)(1)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in

the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps .... If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

## C.    Background

### 1.    Rodriguez's Reports and Testimony

At the time of the administrative hearing, Rodriguez was 39 years old, and at 5'2" tall, weighed approximately 210 pounds.  (Tr. 42, 65).  She lived in a rental house with her three-year-old son and thirteen-year-old daughter, next door to her father and brother.  (Tr. 53, 196). She graduated from high school but had no further education.  (Tr. 42, 178).  Previously, she worked for Chemical Bank for approximately 18 years, beginning as a co-op student in high school and most recently as administrative assistant to the president.  (Tr. 42, 178).  She stopped working in 2009, when she was physically unable to return to work after back surgery and had exhausted her employer-provided leave.  (Tr. 47-48, 177).

Rodriguez alleges disability as a result of back pain, depression, and anxiety.  (Tr. 177, 196).  She testified, however, that her mental impairments alone would not prevent her from working.  (Tr. 68).  She underwent her first back surgery (a fusion) in 1987, at the age of twelve,

and required a second back surgery (a laminectomy) in 2009 after she experienced complications from an epidural steroid injection.  (Tr. 47-48, 50).  Subsequently, she had a third surgery ("cage and screws") in 2011, after which her condition has continued to worsen.  (Tr. 49-50).

Rodriguez testified that her brother helps her care for her young son, who weighs between 30 and 40 pounds, so that she does not have to lift him up or chase him around.  (Tr. 54-55, 84).  She tries to attend her daughter's sporting events, but has difficulty climbing the bleachers and sitting for extended periods of time.  (Tr. 56).  She can drive, shop for groceries, prepare simple meals, and perform some household chores, including dusting, laundry (although her daughter carries the baskets), and helping her children with homework.  (Tr. 57-59, 197-99).  She previously enjoyed riding her motorcycle on lengthy trips throughout Michigan, but she has ridden it only once or twice in the past couple of years, for only 5-10 miles at a time.  (Tr. 66-67, 200).  She can stand for 10-15 minutes at a time, walk for 10-15 minutes, and sit for 15-20 minutes.  (Tr. 61-63).  She has to lie down several times a day, for anywhere from 30 minutes to two hours at a time.  (Tr. 64).  She takes several medications, which make her drowsy and impact her ability to concentrate.  (Tr. 62).  In addition, she uses medical marijuana in the evenings, which helps with pain.  (Tr. 68).

### 2.   Medical Evidence

The Court has thoroughly reviewed Rodriguez's medical record.  In lieu of summarizing her medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

### 3.   Vocational Expert's Testimony

Sandra Steele testified as an independent vocational expert ("VE") at the administrative hearing.  (Tr. 87-91).  The ALJ asked the VE to imagine a hypothetical individual of Rodriguez's

age, education, and work experience who can perform light work with the following additional limitations: can stand/walk only four hours and sit up to six hours of an eight-hour work day, with normal breaks; cannot climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs; can occasionally balance, stoop, kneel, crouch, and crawl; and is limited to simple, routine, and repetitive tasks (unskilled work with a specific vocational preparation ("SVP")[1] of 1 or 2). (Tr. 88-89). The VE testified that the hypothetical individual would not be capable of performing any of Rodriguez's past relevant work. (*Id.*). The VE further testified, however, that the hypothetical individual would be capable of working in the jobs of general office clerk (98,000 jobs nationally), information clerk (86,000 jobs), and packer (82,000 jobs). (Tr. 90).

### D.     The ALJ's Findings

At Step One of the five-step sequential analysis, the ALJ found that Rodriguez has not engaged in substantial gainful activity since December 14, 2011 (the alleged onset date). (Tr. 24). At Step Two, the ALJ found that Rodriguez has the severe impairments of status-post lumbar surgery, chronic pain syndrome, sacroilitis, depression, anxiety, and cannabis dependency. (*Id.*). At Step Three, the ALJ found that Rodriguez's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (*Id.*).

The ALJ then found that Rodriguez retains the residual functional capacity ("RFC") to perform light work with the following additional limitations: can stand/walk only four hours and sit up to six hours of an eight-hour work day, with normal breaks; cannot climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs; can occasionally balance, stoop, kneel,

---

[1] The Dictionary of Occupational Titles ("DOT") lists a specific vocational preparation ("SVP") time for each described occupation. "Using the skill level definitions in 20 CFR 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT." *Soc. Sec. Rul. 00-04p*, 2000 WL 1898704, at *3 (Dec. 4, 2000).

crouch, and crawl; and is limited to simple, routine, and repetitive tasks (unskilled work with a Specific Vocational Preparation ("SVP") of 1 or 2).  (Tr. 26).

At Step Four, the ALJ determined that Rodriguez is unable to perform any of her past relevant work.  (Tr. 31).  At Step Five, the ALJ concluded, based in part on the VE's testimony, that Rodriguez is capable of performing a significant number of jobs that exist in the national economy.  (Tr. 32).  As a result, the ALJ concluded that Rodriguez is not disabled under the Act. (Tr. 33).

### E.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. §405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486

F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion'").

### F.   Analysis

In her motion, Rodriguez argues that the ALJ erred in failing to give "good reasons" for discounting the opinion of her long-time treating neurosurgeon, Avery Jackson, M.D.[2]  (Doc.

---

[2] Rodriguez also argues that the RFC formulated by the ALJ did not adequately account for her mental impairments.  (Doc. #14 at 10-13).  Because the Court is recommending remand on other grounds, it need not address in detail the merits of this argument.  On remand, however, the ALJ

#14 at 13-16).  On October 25, 2013, Dr. Jackson completed a form entitled "Medical Source Statement of Ability to do Work-Related Activities (Physical)," in which he summarized his findings, after having treated Rodriguez for nearly two years.  (Tr. 422-25).  Specifically, Dr. Jackson opined that Rodriguez is limited to lifting/carrying 10 pounds occasionally and less than 10 pounds frequently; can stand and/or walk less than two hours in an eight-hour workday (and needs to change positions hourly); and must periodically alternate sitting and standing to relieve pain or discomfort.  (Tr. 422-23).  Dr. Jackson further opined that pushing and pulling is limited in the lower extremities; she can occasionally kneel and climb ramps, stairs, ladders, ropes, or scaffolds; and she can never balance, crouch, crawl, or stoop.  (Tr. 423).  In addition, Dr. Jackson opined that Rodriguez can only occasionally lift overhead, frequently handle, and should have only limited exposure to temperature extremes and hazards.  (Tr. 424-25).  Finally, Dr. Jackson indicated that Rodriguez's ability to maintain attention and concentration on work tasks throughout an eight-hour workday is significantly compromised by pain, prescribed medication, or both.  (Tr. 424).

In considering Dr. Jackson's opinion, the ALJ said only:

> The undersigned has evaluated Dr. Jackson's medical source statement and gives it some weight.  Although he limited the claimant to a 10-pound weight restriction, the undersigned finds the claimant can lift/carry up to 20 pounds occasionally due in part to her function report that she can lift 40 pounds and she can occasionally lift her 45-pound son.

(Tr. 31).  Rodriguez now argues that the reasons articulated by the ALJ for discounting Dr. Jackson's opinion are not supported by substantial evidence.  (Doc. #14 at 13-16).  The Court agrees.

---

should also thoroughly consider *and discuss* the impact of Rodriguez's depression and anxiety (both of which the ALJ to be "severe impairments") on her RFC.

As both parties acknowledge, and as the Sixth Circuit has recently reemphasized, greater deference is generally given to the opinions of treating medical sources than to the opinions of non-treating medical sources. *See Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013); *see also Rogers*, 486 F.3d at 242. The opinion of a treating physician is the subject of a special rule: such an opinion must be given controlling weight if it is well-supported and not inconsistent with the record; and, even if it is not given controlling weight, it is subject to a "rebuttable presumption of deference." *Vock v. Comm'r of Soc. Sec.*, 2014 WL 4206885, at *14 (E.D. Mich. Aug. 22, 2014) (citing 20 C.F.R. §§404.1527(c) and 416.927(c)). "Closely associated with the treating physician rule, the regulations require the ALJ to 'always give good reasons in [the] notice of determination or decision for the weight' given to the claimant's treating source's opinion." *Blakley*, 581 F.3d at 406 (citing 20 C.F.R. §404.1527(d)(2)). As a rule, the ALJ must build an accurate and logical bridge between the evidence and her conclusion. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544-46 (6th Cir. 2004) (finding the ALJ's failure to make sufficiently clear why he rejected the treating physician's opinion was not harmless error, even if substantial evidence not mentioned by the ALJ may have existed to support the ultimate decision to reject the treating physician's opinion). Thus, "an ALJ's decision must articulate with specificity reasons for the findings and conclusions that he or she makes." *Bailey v. Comm'r of Soc. Sec.*, 1999 WL 96920, at *4 (6th Cir. Feb. 2, 1999).

In other words, even when a treating source's opinion is not given controlling weight because it is not well-supported by medically acceptable clinical and diagnostic techniques, or is inconsistent with other substantial evidence in the record, it should not necessarily be completely rejected; rather, it must be weighed considering a number of factors, including "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment

relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source ….." *Wilson*, 378 F.3d at 544.

In this case, the ALJ discussed only a portion of Dr. Jackson's opinion – namely, his opinion as to Rodriguez's ability to lift and carry. The ALJ discounted Dr. Jackson's opinion that Rodriguez is limited to lifting/carrying 10 pounds occasionally and less than 10 pounds frequently, finding such an opinion inconsistent with statements purportedly made by Rodriguez in "her function report that she can lift 40 pounds and she can occasionally lift her 45-pound son." (Tr. 31).

A review of the record, however, does not necessarily demonstrate any such inconsistency. The function report referenced by the ALJ states as follows:

> Q.    What were you able to do before your illnesses, injuries, or conditions that you can't do now?

> A.    Work a full time job. Lift more than 40 lbs., walk long distances, sit or stand for lengthy amount of time. Ride motorcycles for distances, jog, yard work, housework requiring a lot of bending.

(Tr. 197). From this, then, the ALJ apparently inferred that Rodriguez could, during the relevant time period, lift *up to 40 pounds*. At various places in that same function report, however, Rodriguez also indicated that she has problems lifting; her 12-year-old daughter helps her care for her young son, "lifting him and help[ing] with his daily needs"; she needs help carrying laundry; and that she has difficulty lifting "under 40 lbs." (Tr. 196-98, 201). Additionally, when asked at the administrative hearing whether she could lift her then three-year-old son, who weighed between 30 and 40 pounds, Rodriguez testified as follows:

> Q.    Okay. Are you able, if he falls down or something happened and you would have to lift him up –

> A.    Some things. **Yes, something extreme like that, I certainly would have to lift him up….**

(Tr. 54) (emphasis added).  After eliciting this testimony, the ALJ seemed to acknowledge that such a situation was extreme, saying:  "… I mean, we talked about the 30 to 40 pounds, but I never hold that against people.  If a child falls down and you have to pick [him] up, then you don't have much of a choice."  (Tr. 60).  Despite this acknowledgment, however, the ALJ then discounted the opinion of Rodriguez's treating physician almost entirely because she testified to this effect.  Thus, the Court is simply not persuaded that the reasons articulated by the ALJ for discounting Dr. Jackson's opinion as to Rodriguez's lifting/carrying restrictions are supported by substantial evidence.

Perhaps more importantly, however, the ALJ failed entirely to consider several other aspects of Dr. Jackson's opinion, including his opinion that Rodriguez is limited to less than two hours of standing in an eight-hour workday and must periodically alternate between sitting and standing.  (Tr. 422-23).  As the Commissioner concedes, the ALJ "either should have adopted [these] findings … or explained why those findings were not adopted."  (Doc. #15 at 20).  The Commissioner argues, however, that such an error is harmless because "the ALJ found that [Rodriguez] can perform light sorter and packer jobs" and "the vocational expert testified that these jobs provide a sit-stand option (Tr. 89), meaning that they comport with Dr. Jackson's proposed limitations regarding sitting and standing."  (*Id.* at 21).  Even if the Commissioner is correct in this respect, the ALJ also failed to consider – and either adopt or explain why he was declining to adopt – Dr. Jackson's opinion that Rodriguez is limited in pushing and pulling with her lower extremities.[3]  (Tr. 423).  At least on that issue, then, the ALJ's analysis is so deficient as to leave the Court without a clear understanding as to why the ALJ declined to adopt Dr. Jackson's opinion that Rodriguez's ability to push and pull with her lower extremities was

---

[3] The Commissioner does not argue that this error is harmless; indeed, she ignores this issue entirely.

limited.  The Court cannot find such an error harmless.  *See Allen v. Comm'r of Soc. Sec.*, 2013 WL 5676254, at *14 (E.D. Mich. Sept. 13, 2013); *Pope v. Comm'r of Soc. Sec.*, 2013 WL 4084752, at *3 (E.D. Mich. Aug. 13, 2013) (ALJ's failure to provide "good reasons" for discounting treating physician opinion is not harmless error where the court is not left with a clear understanding of why the opinion was discounted).

Moreover, as set forth above, the applicable regulations require an ALJ, in evaluating the opinion of a treating physician, to consider various factors, including the type and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the treating source.  *See* 20 C.F.R. §404.1527(c). Had the ALJ considered these factors, they seemingly would have provided further support for Dr. Jackson's opinion.  Dr. Jackson is a neurosurgeon (i.e., a specialist), who had been treating Rodriguez for almost two years at the time he completed the October 2013 medical source statement.  Moreover, Dr. Jackson's opinion is consistent with both his own treatment notes and other medical evidence in the record.  Specifically, as the ALJ noted, Rodriguez underwent back surgeries in 1987 and 2009.  (Tr. 27).  An MRI of Rodriguez's lumbar spine performed on September 22, 2011, showed grade 2 spondylolisthesis at L5-S1, associated with moderate to severe narrowing of bilateral neural foramina, and diffuse disk bulge at L2-L3, with mild narrowing of bilateral neural foramina but no spinal canal stenosis.  (Tr. 334).  On Dr. Jackson's recommendation, Rodriguez underwent a third back surgery in December 2011 – L4-S1 decompressive laminectomy, bilateral foraminotomies, and right L2-L3 through L4-L5 transfacet lumbar interbody fusions with cages and pedicle screw fixation.  (Tr. 296-97).  Rodriguez subsequently underwent physical therapy but continued to experience pain, and x-rays taken between 2012 and 2014 showed grade 3 spondylolisthesis at L5-S1.  (Tr. 304, 318, 437).  She

continued to suffer from sacroilitis and underwent a series of sacroiliac joint injections. (Tr. 361, 366-67). By November 2012, Dr. Jackson continued to note Rodriguez's chronic back pain and "discussed minimally invasive SI joint fusions and iliac crest screws as a final option." (Tr. 371). Likewise, an MRI performed in December 2013 – after Rodriguez continued to complain of pain radiating to the bilateral extremities – also showed grade 3 spondylolisthesis of L5 on S1, as well as a large area of fluid collection in the posterior soft tissue at L3, L4, and L5 (likely related to postoperative seroma). (Tr. 438). Thus, where Dr. Jackson's opinion was consistent with his own treatment notes and supported by other medical evidence in the record, and where the ALJ erred in failing to give "good reasons," supported by substantial evidence, for discounting that opinion, remand is warranted.

## III.   CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that the Commissioner's Motion for Summary Judgment [**15**] be **DENIED**, Rodriguez's Motion for Summary Judgment [**14**] be **GRANTED IN PART**, the ALJ's decision be **REVERSED**, and this case be **REMANDED** for further proceedings consistent with this Recommendation.

Dated: August 16, 2016                    s/David R. Grand
Ann Arbor, Michigan                       DAVID R. GRAND
                                          United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any

further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 16, 2016.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager